# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30781

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2014

Lyle W. Cayce
Clerk

SCOTT BRAME MOFFETT,

Plaintiff-Appellant

v.

R. RICK BRYANT,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Plaintiff-Appellant Scott Brame Moffett brought a 42 U.S.C. §§ 1983 and 1985 lawsuit against R. Rick Bryant, a Louisiana state court judge, alleging a deprivation of civil rights. The district court granted Bryant's motion to dismiss and entered final judgment. Moffett timely appeals. We AFFIRM.

**I**

Defendant-Appellee R. Rick Bryant was a judge for the 14th Judicial District Court, Calcasieu Parish, Louisiana. In this capacity, Bryant presided over a custody proceeding between Mr. Moffett and his ex-spouse, Lauren Lee Moffett. According to the complaint, Bryant granted favorable rulings to Ms. Moffett, including domiciliary custody of their minor children during the school

No. 13-30781

year.  After growing suspicious that Bryant and Ms. Moffett maintained an undisclosed social relationship with one another, Mr. Moffett filed a motion to recuse Judge Bryant.

A recusal hearing was then held before Judge Robert Wyatt.  At this hearing, Bryant testified that he had only briefly spoken with Ms. Moffett. Based upon this testimony and Ms. Moffett's testimony, Judge Wyatt denied the motion to recuse.

Mr. Moffett later renewed the recusal motion.  In response, Bryant issued an order recusing himself, citing "his friendship with Lauren Moffett." He explained "that after handling the custody case he had contact on a social basis with Lauren Moffett," and that he "has had contact on a social basis with Laura [sic] Moffett concerning some non-legal, non-court related topics."  At the subsequent recusal hearing on the renewed motion, the court held that Judge Bryant should have recused himself from the case at the beginning, and should have done so on the basis of his relationship with Ms. Moffett.  A newly assigned judge then set aside and rendered as absolute nullities all of Bryant's orders entered in the custody proceeding.

Mr. Moffett then filed this suit, seeking monetary damages under 42 U.S.C. §§ 1983 and 1985.  Mr. Moffett alleges that to prevent Bryant from being recused, Bryant and Ms. Moffett conspired to make false statements at the first recusal hearing about the amount of contact they had with one another. Bryant moved for threshold dismissal, arguing (i) that he should be afforded absolute judicial or witness immunity, (ii) that the § 1983 claim should be dismissed as inadequately pled because he was not acting under color of law when he testified, and (iii) that the § 1985 claim should also be dismissed as inadequately pled because Mr. Moffett fails to allege any class-based animus. The district court granted the motion, dismissing the claims against Judge Bryant.  In granting the motion, the district court concluded that although

2

No. 13-30781

neither immunity applied to Bryant's testimony,[1] the complaint failed to allege that Judge Bryant was acting under color of law when he testified at the recusal hearing, and failed to allege any class-based animus, as § 1985 requires. After Mr. Moffett and Ms. Moffett settled the remaining claims, the district court entered final judgment, and Mr. Moffett timely appeals.

## II

We "review a district court's dismissal under Rule 12(b)(6) de novo, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs.'"[2] To survive threshold dismissal, "plaintiffs must plead 'enough facts to state a claim to relief that is plausible on its face.'"[3]

Mr. Moffett argues that the district court erred in concluding that he failed to plead sufficient facts to render his § 1983 claim plausible. Mr. Moffett explains that the district court's conclusion that Bryant was not acting under color of law while testifying at the recusal hearing was improperly based upon the district court's previous conclusion that judicial immunity did not apply because Bryant was not performing a judicial function. Mr. Moffett argues that the analysis properly looks to the status of the officer, not simply the function being performed, and accordingly, he argues that Bryant was acting under the color of law as a witness at his recusal hearing because of his 'status' as a judge.

---

[1] Specifically, the district court held that "to the extent that plaintiff claims damages for the decision of [Bryant] in his judicial capacity . . . , Bryant is entitled to absolute judicial immunity," but "Bryant's testimony at his own recusal hearing cannot be said to have been a normal judicial function for which he is afforded judicial immunity." The district court then considered the question of witness immunity, and, applying *Louisiana* law, concluded that "in light of the facts of this case in particular, this court does not see any redeeming legal or societal value in protecting that particular testimony from civil liability for any damages resulting therefrom."

[2] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (internal citation omitted).

[3] *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

No. 13-30781

We need not reach the question of whether Bryant was acting under the color of law, because the complained of acts occurred while Bryant was testifying as a witness in an adversarial hearing.  As the Supreme Court has repeatedly made clear, in the § 1983 context, "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony."[4]  This is because "a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence [and] . . . the possibility of civil liability [is] not needed to deter false testimony at trial because other sanctions . . . provide[] a sufficient deterrent."[5]  And we have explained that the "reason for granting absolute immunity to a witness against claims arising from testimony 'applies with equal force in both trial and [adversarial] pretrial settings.'"[6]  Here, Bryant's testimony was adduced in the course of an adversarial proceeding.  Bryant was a witness, under oath, subject to criminal liability for perjury, and available for cross-examination.  Accordingly, when Bryant testified, he was testifying as a witness in an adversarial proceeding and is thus absolutely immune from § 1983 liability.

We turn next to Mr. Moffett's claim under § 1985, and we conclude that the § 1985 claim is inadequately pled, because a violation under § 1985 requires "class-based, invidiously discriminatory animus behind the conspirator's action."[7]  Here, Mr. Moffett contends that he was denied equal protection based on his gender "because of the 'relationship' between [Judge] Bryant and [Ms.] Moffett, the caliber of which he, as a man, could not and did

---

[4] *Rehberg v. Paulk*, 132 S.Ct. 1497, 1505 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332–33 (1983)).

[5] *Id.* at 1505 (citing *Briscoe*, 460 U.S. at 342).

[6] *Moore v. McDonald*, 30 F.3d 616, 619 (5th Cir. 1994) (quoting *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir. 1987)).  The Supreme Court has extended the same immunity to witnesses in grand jury proceedings.  *See generally Rehberg*, 132 S.Ct. 1497.

[7] *Bryant v. Military Dep't*, 597 F.3d 678, 687 (5th Cir. 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

4

No. 13-30781

not have with [Judge] Bryant." But Mr. Moffett offers no legal authority, nor are we aware of any, to support his claim that such facts demonstrate gender-based discrimination. At best, Mr. Moffett has alleged the existence of individual bias based upon a personal social relationship—a far cry from class-based discriminatory animus.[8] Accordingly, Mr. Moffett has failed to plead sufficient facts to plausibly demonstrate class-based discriminatory animus behind the alleged conspirators' action.

For these reasons, we AFFIRM.

---

[8] *See, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269–70 (1993) (finding no animus because conspirators' actions were not "motivated by a purpose . . . directed specifically at women as a class" and that "the 'animus' requirement . . . does demand . . . at least a purpose that focuses upon women *by reason of their sex*").