# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30535

United States Court of Appeals
Fifth Circuit

**FILED**

May 27, 2016

Lyle W. Cayce
Clerk

KRISTIN LOUPE,

      Plaintiff - Appellant

v.

ROBIN O'BANNON; RICKY BABIN,

      Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

DENNIS, Circuit Judge:

The issues in this case are whether a state prosecuting attorney is absolutely immune from suit for money damages for (1) ordering a sheriff's deputy to make a warrantless arrest without probable cause of a witness in retaliation for the witness's refusal to testify that her boyfriend had struck her in the face during a domestic violence altercation, and (2) subsequently maliciously prosecuting the witness for making a false report of domestic violence. We conclude that the prosecuting attorney is absolutely immune from liability for initiating an alleged malicious prosecution against the witness but not absolutely immune from liability for ordering the officer to make a warrantless arrest.

No. 15-30535

I

Plaintiff-Appellant Kristin Loupe filed a civil rights action pursuant to 42 U.S.C. § 1983, and several Louisiana tort actions, against Ascension Parish District Attorney Ricky Babin, Assistant District Attorney Robin O'Bannon, Sheriff Jeffrey Wiley, and two sheriff's deputies. Defendants Babin and O'Bannon moved to dismiss Loupe's complaint pursuant to Rule 12(b)(6) on grounds of absolute prosecutorial immunity. The District Court granted the motion to dismiss as to all claims against DA Babin and ADA O'Bannon. Plaintiff-Appellant Loupe appealed only the dismissal of her federal and state claims against O'Bannon on the grounds of absolute immunity.

We review de novo the grant of a Rule 12(b)(6) motion to dismiss. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). "In determining immunity, we accept the allegations of [the plaintiff's] complaint as true." *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

II

The facts alleged in Loupe's complaint are that: In January 2014, Kristin Loupe was called as a witness in state court to testify at a bond hearing for criminal defendant David Adams, Jr., who was her boyfriend at the time. Robin O'Bannon, the Ascension Parish Assistant District Attorney prosecuting the case, questioned Loupe about an incident that occurred approximately 18 months earlier, in which the Ascension Parish Sheriff's Office responded to a report of a domestic dispute between Loupe and Adams. Loupe could not recall the incident in detail, but she did testify that "there was a dispute that went too far and that David hurt her arm." When O'Bannon asked Loupe if Adams had hit her in the face, she answered, "No." After further questioning, Loupe continued to deny that Adams had hit her in the face. As a result, O'Bannon asked the presiding judge to order that Loupe be arrested. The judge refused

2

No. 15-30535

O'Bannon's request.  O'Bannon then called Blake Prejean, the Sheriff's Deputy who completed the domestic dispute police report, to testify.  Deputy Prejean stated that Loupe did not tell him that Adams hit her in the face.  O'Bannon then ordered James Wolf, the Sheriff's Deputy on duty at the courthouse, to arrest Loupe for filing a false police report.  Loupe was cuffed, escorted from the building, and placed in a police vehicle, then transported to the Ascension Parish Jail.

Loupe was placed in a "small shower cell," an unheated room with cinderblock walls and a concrete floor that was covered with puddles of water.  Loupe was left in the cell for at least an hour with no shoes and only a very thin jumpsuit.  Loupe was eventually taken from the shower cell by another Deputy, who advised her that she was being released on her own recognizance.  Loupe was finally released from the jail around 7:30 pm.  Loupe was later treated for paresthesia and the beginning stages of frostbite caused by the conditions she experienced while in custody.

The Ascension Parish District Attorney's Office charged Loupe with criminal mischief for filing a false police report.  Loupe pleaded not guilty.  When the case went to trial, the District Attorney's Office stipulated that Loupe was not guilty of the charges, and Loupe was acquitted.  On September 11, 2014, Loupe filed this suit in the United States District Court for the Middle District of Louisiana.

On May 19, 2015, the district court issued a ruling and order on Defendant-Appellee O'Bannon's motion to dismiss, which was based on a claimed entitlement to absolute prosecutorial immunity. The court reasoned: "As reprehensible as the allegations of maliciousness may be, if true, ADA O'Bannon was acting within the broad purview of being an advocate for Ascension Parish in ordering the arrest of Plaintiff for filing a false police report, and subsequently pursuing the charges." The court thus found that

No. 15-30535

O'Bannon was entitled to absolute prosecutorial immunity from civil liability in her individual capacity with respect to all claims against her. The district court therefore granted the motion to dismiss in full.

III

Section 1983 creates a private right of action to vindicate violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Yet despite its broad reach, the Supreme Court "has long recognized that the statute was not meant to effect a radical departure from ordinary tort law and the common-law immunities applicable in tort suits." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1502 (2012). Sixty-five years ago, in *Tenney v. Brandhove*, 341 U.S. 367 (1951), the Court held that § 1983 did not abrogate the absolute immunity enjoyed by legislators for actions taken within the legitimate sphere of legislative authority. Immunities "well grounded in history and reason," the Court wrote, were not eliminated "by covert inclusion in the general language" of § 1983. *Id.* at 376. "This interpretation has been reaffirmed by the Court time and again and is now an entrenched feature of our § 1983 jurisprudence." *Rehberg*, 132 S. Ct. at 1502 (citing, e.g., *Pierson v. Ray*, 386 U.S. 547, 554-555 (1967) ("The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held ... that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine.")).

In *Rehberg*, the Supreme Court explained that because Congress intended § 1983 to be understood in light of common law principles, "the Court has looked to the common law for guidance in determining the scope of the immunities available in a § 1983 action." *Id.* Yet the Court has made clear

that, although the common law is used to determine the scope of the absolute immunity available under § 1983, the federal civil rights statute is not "simply a federalized amalgamation of pre-existing common-law claims, an all-in-one federal claim encompassing the torts of assault, trespass, false arrest, defamation, malicious prosecution, and more." *Id.* at 1504. Rather, "[t]he new federal claim created by § 1983 differs in important ways from those pre-existing torts. It is broader in that it reaches constitutional and statutory violations that do not correspond to any previously known tort." *Id.* at 1504-1505 (citing *Kalina*, 522 U.S. at 123). "But it is narrower in that it applies only to tortfeasors who act under color of state law." *Id.* at 1505 (citing *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)). Section 1983 "ha[s] no precise counterpart in state law . . . [I]t is the purest coincidence when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 272 (1985) (internal quotation marks and citation omitted)). "Thus, both the scope of the new tort and the scope of the absolute immunity available in § 1983 actions differ in some respects from the common law." *Id.*[1]

When determining who is entitled to absolute immunity, the Court has taken what has been termed a "functional approach." *Rehberg*, 132 S. Ct. at 1503 (citing *Forrester v. White*, 484 U.S. 219, 224 (1988); *Burns v. Reed*, 500 U.S. 478, 486 (1991)). The Court "consult[s] the common law to identify those governmental functions that were historically viewed as so important and

---

[1] In the present case, however, it is important to note that the Louisiana Supreme Court has endorsed the functional approach employed by the Supreme Court and held that under Louisiana law "granting absolute immunity to prosecutors from malicious prosecution suits is appropriate when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process." *Knapper v. Connick*, 681 So. 2d 944, 950 (La. 1996).

vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure that they are performed 'with independence and without fear of consequences.'" *Id.* (quoting *Pierson*, 386 U.S. at 554). Following this approach, the Court has identified the following functions that are absolutely immune from liability for damages under § 1983: actions taken by legislators within the legitimate scope of legislative authority, *Tenney*, 341 U.S. at 397; actions taken by judges within the legitimate scope of judicial authority, *Pierson*, 386 U.S. at 554; the giving of testimony by witnesses at trial, *Briscoe*, 460 U.S. at 334; and, relevant to this case, actions taken by prosecutors in their role as advocates in the judicial process, *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976).[2]

A prosecutor enjoys absolute immunity when her actions are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Absolute prosecutorial immunity is meant to "protect[] the prosecutor from harassing litigation that would divert his time and attention from his official duties" and to "enabl[e] him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina*, 522 U.S. at 125 (quoting *Imbler*, 424 U.S. at 424). The Supreme Court has made clear that "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Id.* Thus, "the actions of a prosecutor are not absolutely immune

---

[2] By contrast, the Court has found no absolute immunity for the acts of the chief executive officer of a state, the senior and subordinate officers of a state's National Guard, or the president of a state university, *Scheuer v. Rhodes*, 416 U.S. 232, 247-248 (1974); school board members, *see Wood v. Strickland*, 420 U.S. 308, 318 (1975); the superintendent of a state hospital, *see O'Connor v. Donaldson*, 422 U.S. 563, 577 (1975); police officers, *see Pierson*, 386 U.S. at 555; prison officials and officers, *Procunier v. Navarette*, 434 U.S. 555, 561 (1978); and private co-conspirators of a judge, *see Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Rather, when deciding whether absolute immunity applies, pursuant to the Court's cases, we must apply the functional approach, looking "to the nature of the function performed, not the identity of the actor who performed it." *Id.* at 269 (internal citations and quotation marks omitted). A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as "advocate for the state" in the courts, or when her conduct is "intimately associated with the judicial phase of the criminal process." *See Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775-76 (5th Cir. 1999). On the other hand, a prosecutor is afforded only qualified immunity for acts performed in the course of "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273; *see also Hoog-Watson v. Guadalupe*, 591 F.3d 431, 438 (5th Cir. 2009) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" (quoting *Buckley*, 509 U.S. at 273)).

Under the functional approach, a prosecutor is entitled to absolute immunity when, for example, she receives information regarding the violation of criminal law and subsequently obtains an arrest warrant, *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), but not when she "advis[es] the police in the investigative phase" of a criminal case, *Burns,* 500 U.S. at 493. In *Rykers*, "the federal prosecutors received information from Louisiana authorities alleging a violation of Louisiana criminal law; translated that information into the federal charge of interstate flight to avoid prosecution under 18 U.S.C. § 1073;

and obtained a federal arrest warrant." 832 F.2d at 897. We observed that "a clearer case of initiating a prosecution can scarcely be imagined," despite the fact that charges against the plaintiff were later dropped. *Id.* In *Burns,* the plaintiff sought to hold a state prosecutor liable under § 1983 for advice he gave the police that plaintiff's confession under hypnosis constituted probable cause. 500 U.S. at 482. The Supreme Court rejected the argument that "giving legal advice is related to a prosecutor's roles in screening cases for prosecution and in safeguarding the fairness of the criminal judicial process." *Id.* at 495. Observing that "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," the Court concluded that what matters is whether the prosecutor's actions "are closely associated with the *judicial process.*" *Id.* at 495 (emphasis added).

Applying the principles of absolute immunity and the functional approach prescribed by the Supreme Court's decisions, we conclude that O'Bannon is absolutely immune from suit for money damages based on her alleged malicious prosecution of Loupe. Our decisions applying those of the Supreme Court make clear that "[p]rosecutors enjoy absolute immunity for acts taken to initiate prosecution," *Rykers*, 832 F.2d at 897 (citing *Imbler*, 424 U.S. at 430-431), and that this "[a]bsolute immunity shelters prosecutors even when they act "maliciously, wantonly or negligently." *Id.* (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985)).

However, applying the Supreme Court's decisions, we conclude that O'Bannon is not absolutely immune from Loupe's federal and state actions based on O'Bannon's alleged order of Loupe's warrantless arrest, as that conduct was not part of O'Bannon's prosecutorial function. In *Burns*, the Supreme Court held that giving legal advice to police, including advice as to whether there is probable cause to arrest a suspect, is not a function protected

by absolute immunity. 500 U.S. at 493-96. "The mere rendering of legal advice is not so closely connected to the judicial process that litigation concerning that advice would interfere with it." *Id.* at 493-94.[3] The same is true when a prosecutor orders a warrantless arrest. In doing so, the prosecutor:

> acts directly to deprive someone of liberty; he steps outside of his role as an advocate of the state before a neutral and detached judicial body and takes upon himself the responsibility of determining whether probable cause exists, much as police routinely do. Nothing in the procuring of immediate, warrantless arrests is so essential to the judicial process that a prosecutor must be granted absolute immunity.

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 914 (9th Cir. 2012). Indeed, the aberrant nature of O'Bannon's conduct is emphasized by the fact that O'Bannon ordered Loupe's arrest immediately after the court refused her request to issue such an order. *See id.* ("[T]he aberrant nature of [the prosecutor's] behavior is evinced by the fact that he ordered the arrests while he had a request for arrest warrants pending before a judge."). Ordering a warrantless arrest is not intimately associated with the judicial phase of the criminal process; it is conduct outside the judicial process and therefore is not protected by absolute immunity.[4] *Accord Lacey*, 693 F.3d at 914; *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (prosecutor was acting in an administrative or investigative capacity when he ordered the plaintiff's arrest after listening to a tape of his confession); *Day v. Morgenthau*, 909 F.2d 75, 78 (2d Cir. 1990) (prosecutor was

---

[3] The Court in *Burns* also observed that in *Mitchell v. Forsythe*, 472 U.S. 511, 521 (1985), the Court denied immunity to the United States Attorney General for claims arising out of his authorization of a warrantless wiretap—"[e]ven though the wiretap was arguably related to a potential prosecution"—because the Attorney General "was not acting in a prosecutorial capacity" when he authorized the wiretap. 500 U.S. at 495-96.

[4] Contrary to O'Bannon's assertions, it makes no difference that she ordered Loupe's arrest while in a courtroom. Just as "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor," *Buckley*, 509 U.S. at 273, a prosecutor's conduct is not intimately associated with the judicial phase of the criminal process merely because it takes place in a courtroom.

No. 15-30535

not acting within his prosecutorial function when he directed a court officer to arrest the plaintiff); *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990) ("[A] prosecutor who . . . orders a warrantless arrest ordinarily will not be entitled to absolute immunity.").

## IV

For these reasons, we AFFIRM the district court's dismissal of the malicious prosecution claim but otherwise VACATE the district court's grant of O'Bannon's motion to dismiss Loupe's suit for money damages based on her alleged wrongful arrest and REMAND Loupe's federal and state claims in that respect to the district court for further proceedings.