UNITED STATES of America,
Appellee,

v.

Michael GRIFFITH, Defendant–
Appellant.

No. 03–1510.

United States Court of Appeals,
Second Circuit.

Argued June 16, 2004.

Decided: Oct. 4, 2004.

Gary Schoer, Syosset, N.Y. for Defendant–Appellant.

Lee J. Freedman, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, on the brief), Brooklyn, N.Y. for Appellee.

Before: WALKER, Chief Judge, B.D. PARKER, Circuit Judge and MORDUE, District Judge.*

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant Michael Griffith appeals from a judgment of the United States District Court for the Eastern District of New York (Carol B. Amon, *District Judge*), convicting him, after a jury trial, of possession of a firearm as a felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Griffith was principally sentenced to a term of 32 months' imprisonment to be followed by a three-year term of supervised release.

On August 21, 2002, while on routine patrol in an unmarked car in Brooklyn, Officer Edward Deighan saw Griffith and Cleveland Hainey sitting on the front staircase of an apartment. When Officer Deighan noticed that one of the men was drinking a bottle of beer, he got out of the car and said: "Police, do you have a second?" The two men immediately stood up and ran down the steps, around the side of the staircase, and toward a basement door underneath the staircase. Officer Deighan saw the taller, heavier man (later identified as Griffith) push open the door, remove a gun from his waistband, and toss the gun aside as he ran into the basement

---

* The Honorable Norman A. Mordue, of the United States District Court for the Northern District of New York, sitting by designation.

apartment. Officer Deighan and his partner followed the men into the apartment, apprehended them, and recovered the gun. The apartment was owned by Priscilla McClean, Hainey's mother.

On appeal, Griffith argues, *inter alia:* (1) that the district court improperly permitted McClean and Hainey to invoke their Fifth Amendment privilege against self-incrimination; (2) that several of the district court's evidentiary rulings were improper; and (3) that the reasons proffered by the government for striking three non-caucasian jurors were pretextual and not race-neutral and thus violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

We have affirmed the judgment of the district court in an unpublished summary order while noting that one evidentiary issue required further explanation. *See United States v. Griffith,* 102 Fed.Appx. 203 (2d Cir. June 18, 2004), 2004 U.S.App. LEXIS 12094, at *3. That issue, a question of first impression in this circuit, is whether, under 18 U.S.C. § 3153, information obtained from the defendant during a pretrial-services interview may be used against him for impeachment purposes.[1]

After Griffith took the stand, the government challenged his credibility on cross-examination. In doing so, the prosecutor confronted Griffith with two allegedly false statements he made to his pretrial-services officer:[2] (1) that he was a United States citizen who holds a United States passport and (2) that he had not used any illegal drugs while on pretrial supervision. These statements were in contrast to evidence possessed by the government that Griffith was not a United States citizen holding a United States passport and that drug tests revealed that he had used marijuana while on pretrial supervision. Over Griffith's objection, the district court allowed the two pretrial statements into evidence as bearing on Griffith's credibility.

Griffith argues that the admission at trial of his statements to pretrial services was reversible error. He maintains that 18 U.S.C. § 3153 bars the government from cross-examining a defendant concerning any statements he made to pretrial services. Sections 3153(c)(1) and (c)(3) of

---

1. We have considered a defendant's request for disclosure of exculpatory or impeachment information in the presentence report of a government witness in light of 18 U.S.C. § 3153. *See United States v. Pena,* 227 F.3d 23, 28 (2d Cir.2000)(holding that "when a defendant requests that the government disclose pretrial services materials [of a government witness] pursuant to its discovery obligations to provide defense counsel with exculpatory and impeachment information in its possession, district judges should review those materials *in camera* and determine whether they contain such information"). However, in *Pena* we distinguished between third-party requests for pretrial-services information and section 3153's "allowance of certain uses of such materials against that defendant." *Id.* Moreover, we specifically noted that the question presented here, whether a defendant's own statements to pretrial services could be used against

him for impeachment purposes, was not then properly before us. *Id.* This case, unlike *Pena,* involves the admissibility of the defendant's statements to pretrial services to impeach the defendant at trial, not the disclosure of pretrial-services information to a third party.

2. Pretrial-services reports contain:

information pertaining to the pre-trial release of each individual charged with an offense, including information relating to any danger that the release of such person may pose to any other person or the community, and, where appropriate, include a recommendation as to whether such individual should be released or detained and, if release is recommended ... appropriate conditions of release ....

18 U.S.C.§ 3154(1).

U.S.C. Title 18 provide that, except in circumstances not relevant here:

[ (1) ] information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential . . . .

. . .

[ (3) such information] is not admissible on the issue of guilt in a criminal judicial proceeding

. . .

We disagree with Griffith and hold that a defendant's statements to pretrial services are admissible against the defendant when used to impeach the defendant's credibility.

Generally, relevant evidence—that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Fed.R.Evid. 401—is admissible for all purposes "except as otherwise provided by the Constitution [or] by Act of Congress," Fed.R.Evid. 402. The statute at issue here, 18 U.S.C. § 3153, is thus an exception to the general rule that all relevant evidence is admissible. However, such exceptions are not to be read broadly because, otherwise, evidence that is relevant—in this case because it is probative on the question of truthfulness and credibility—would be inadmissible at trial. *See United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)("Whatever their origins, . . . exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."); *see also* Fed. R.Evid. 608(b) (specific instances of conduct may, in the district court's discretion, "if probative of truthfulness or untruthfulness, be inquired into on cross-examination . . . ."). In view of the strong principle favoring admissibility of relevant evidence at trial, we will not read the exception to admissibility in § 3153(c)(3) beyond its plain meaning.

The Eighth Circuit in *United States v. Wilson*, 930 F.2d 616 (8th Cir.1991) rejected a defendant's challenge to the use of his pretrial-services statements to impeach him on cross-examination based on the plain reading of the statute. It held, in substance, that while the statute bars the admissibility of such statements on the "issue of guilt," the statute did not prohibit their use to impeach credibility. "Therefore, under a plain reading of the statute, the government can use pretrial services interview statements to impeach a defendant." *Id.* at 619. We agree with the Eighth Circuit that the plain language of § 3153(c)(3) poses no bar to the admissibility of the defendant's statements to pretrial services for the purpose of impeaching the defendant's credibility.

Our holding comports with well-established Supreme Court precedent that has drawn a distinction between using evidence to prove substantive guilt and using evidence to impeach. Policies extrinsic to the trial that may warrant barring the former frequently give way when the issue is the witness's truthfulness under oath at trial. *See Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (evidence secured during a police-initiated conversation occurring after the defendant has invoked his Sixth Amendment rights is inadmissible as substantive evidence in the government's case-in-chief, but is admissible to impeach the defendant's inconsistent trial testimony); *United States v. Havens*, 446 U.S. 620, 626–28, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (evidence suppressed as the fruit of an illegal search and seizure may be used to impeach a defendant's trial testimony); *Harris v. New York*, 401 U.S. 222, 225–26, 91

S.Ct. 643, 28 L.Ed.2d 1 (1971) (statement made by defendant to police in violation of *Miranda* is inadmissible in the government's case-in-chief, but is admissible to impeach the defendant's credibility).

## CONCLUSION

For the foregoing reasons, we affirm.

Shortly after we resolved this case by summary order, the Supreme Court issued its decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Counsel for Griffith promptly filed a motion for an extension of time to file a petition for rehearing until 14 days following the publication of this opinion, informing the court of the *Blakely* decision and of its potential impact on Griffith's sentence, which we granted. We recently held, however, that, until the Supreme Court instructs otherwise (as it will have the opportunity to do when it considers the arguments in *United States v. Booker*, No. 04–104, and *United States v. Fanfan*, No. 04–105), we will assume that *Blakely* does not affect the Guidelines and, accordingly, that all sentences imposed in accordance with the Guidelines are valid. *See United States v. Mincey*, 380 F.3d 102, 106, 2004 WL 1794717, at *3 (2d Cir. August 12, 2004).

Notwithstanding the foregoing, the mandate in this case will be held pending the Supreme Court's decision in *Booker* and *Fanfan*. Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan*. In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan*.