**UNITED STATES of America,**
**Appellee,**

v.

**Pedro Duran LONDONO, Ingrid Zapata, Defendants–Appellants.**

Nos. 05–1626–cr(L), 05–3459–cr(CON).

United States Court of Appeals, Second Circuit.

March 15, 2006.

Frederick H. Cohn, New York, NY, for Appellant Londono.

Roger Bennet Adler, New York, NY, for Appellant Zapata.

Benjamin M. Lawsky, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief, Karl Metzner, Assistant United States Attorney), New York, NY, for Appellee, of counsel.

Present: Hon. SONIA SOTOMAYOR, Hon. REENA RAGGI, Circuit Judges, and Hon. MIRIAM GOLDMAN CEDARBAUM, District Judge.*

## SUMMARY ORDER

Defendants-appellants Pedro Duran Londono and Ingrid Zapata appeal from judgments entered on March 23, 2005, and June 21, 2005, respectively, sentencing Londono principally to 65 months' imprisonment following a plea of guilty and Zapata to 42 months' imprisonment following a jury trial for conspiring to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. We assume the parties' familiarity with the facts in this case, its relevant procedural history, and the issues on appeal.

### I. Londono's Claim

Londono contends that the district court committed clear error in denying his motion pursuant to § 5K2.13 of the Sentencing Guidelines for a downward depar-

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

ture based on diminished capacity. We reject that claim. A district court's refusal prior to *United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), to depart downward from the applicable Guideline range was generally not appealable. *See United States v. Valdez*, 426 F.3d 178, 184 (2d Cir.2005). We reviewed a refusal to depart downward, however, where the district court misapplied the Guidelines, imposed a sentence that was illegal, or mistakenly believed that it did not have the authority to depart, *see, e.g., United States v. Lainez–Leiva*, 129 F.3d 89, 93 (2d Cir.1997), but the presumption was that the district court understood the circumstances under which it could exercise its discretion to depart from the Guidelines. *United States v. Brown*, 98 F.3d 690, 694 (2d Cir.1996).

Our ruling in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), did not change our case law with respect to the manner in which Guideline calculations are done or how we review these calculations. *See id.* at 112 ("The applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan*."). Here, the district court denied Londono's motion after hearing evidence, and it did not clearly err in determining that there was no causal connection between Londono's depression and his decision to join in a narcotics conspiracy. Because the district court did not misapply the Guidelines, impose an illegal sentence, or fail to understand that it had the authority to depart, we have no basis to review or to overturn the district court's denial of Londono's motion for a downward departure based on diminished capacity.

## II. Zapata's Claims

### A. *Evidentiary Rulings*

#### 1. *Zapata's Testimony*

■ Zapata claims that the district court abused its discretion by refusing to allow her to testify, in response to counsel's hypothetical questions, to what she would have done had she known that the money she took to Florida was drug money. Zapata's contention on appeal that the questions were designed to elicit admissible hearsay under either the present-state-of-mind exception to the hearsay rule, Fed. R.Evid. 803(3), or the residual exception, Fed.R.Evid. 807, is inapposite given that counsel's questions did not elicit an out-of-court statement. Even if the district court erred by refusing to permit Zapata to testify to what she would have done, however, the error was harmless given that Zapata was permitted to testify (1) that she did not know the true purpose of the money she transported to Florida, (2) that she had agreed to transport $2000 as a favor to Fabian Londono on a trip to visit her mother in Florida, and (3) that she thought the $8000 she transported on a second trip to Florida was to be used to rent or buy an apartment there. *See United States v. Yousef*, 327 F.3d 56, 121 (2d Cir.2003) (holding that evidentiary error is harmless if there is a "fair assurance" that the jury's judgment was not "substantially swayed" by the error).

#### 2. *Western Union Records*

■ We reject Zapata's claim that the district court abused its discretion by admitting into evidence Western Union wire receipts because those receipts constituted inadmissible hearsay or, in the alternative, because they were not relevant if admitted as non-hearsay. The district court did not admit the wire receipts under Rule 803(6), the business records exception to the hearsay rule, but instead admitted the receipts for the limited purpose of demonstrating that a transaction occurred and that someone claiming to be "Ingrid Zapata" was involved in it. *See United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir.1980) (holding that a hotel guest registration

card was admissible as non-hearsay to show that someone calling himself by the name on the card had registered at the hotel). The government relied on other evidence at trial, in the form of Carolina Rios's testimony that Zapata had wired the money to Florida, to urge the jury to infer that the receipts were linked to Zapata. *See United States v. Saint Prix*, 672 F.2d 1077, 1083 (2d Cir.1982) (stating that a record may be admitted to prove that someone using a defendant's name did something "so long as other evidence connected [defendant] with the person using his name"); *Lieberman*, 637 F.2d at 101 (noting that "it was proper to receive the [record] for the limited non-hearsay purpose, with other evidence admitted from which the jury could infer that the [record] spoke the truth"). The receipts were thus relevant. Moreover, the district court gave a limiting instruction that the receipts did not constitute independent proof that Zapata had sent the transfers.

Zapata also contends that the receipts should have been excluded under Rule 403 because they were not relevant and because the drug traffickers involved in this case had often sought to mask their identities. For the reasons stated above, the receipts were relevant. Moreover, given that the government presented independent evidence that Zapata had wired the money to Florida, in the form of Rios's testimony, Zapata has identified no unfair prejudice. The district court thus did not abuse its discretion under Rule 403 by admitting the receipts into evidence.

### 3. *Use of Pretrial Services File for Impeachment Purposes*

█ The district court also did not abuse its discretion by permitting the government to use documents from Zapata's Pretrial Services file for impeachment purposes. After Zapata denied, on direct examination, that it was her signature that appeared on two money wire receipts re-

covered at the time of her arrest, the government used signatures obtained from the file in order to impeach Zapata's testimony that the signature on the receipts was not hers. We have previously held that "a defendant's statements to pretrial services are admissible against the defendant when used to impeach the defendant's credibility." *United States v. Griffith*, 385 F.3d 124, 126 (2d Cir.2004). To the extent that Zapata argues that our holding in *Griffith* was erroneous, we are bound by that ruling. *See In re Sokolowski*, 205 F.3d 532, 534–35 (2d Cir.2000) (stating that this Court "is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*"; internal quotation marks and citations omitted). To the extent that Zapata contends that the government sought access to the file not to impeach Zapata's testimony but to conduct a forensic comparison of Zapata's signature on the wire receipts, we reject that contention and conclude that, because the government used signatures from Zapata's Pretrial Services file to impeach her testimony, our holding in *Griffith* forecloses Zapata's claim.

### B. *Fabian Londono's Assertion of His Right Against Self–Incrimination*

█ We further reject Zapata's contention that Fabian Londono, by pleading guilty, affirmatively waived his Fifth Amendment privilege against self-incrimination and should have been compelled to testify for the defense. At the time of Zapata's trial, Londono had pled guilty but had not yet been sentenced. *See Mitchell v. United States*, 526 U.S. 314, 325–27, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (holding that the Fifth Amendment privilege against self-incrimination survives a guilty plea and will not be considered waived until defendant is sentenced). Were Londono to have testified at Zapata's trial, his

testimony might have affected his Guidelines calculation and, ultimately, his sentence.

■ We also reject Zapata's argument, raised for the first time on appeal, that the district court should have ordered the government to grant testimonial immunity to Fabian Londono. We have previously suggested that judicially-mandated immunity may be conferred in extraordinary circumstances, *see United States v. Diaz*, 176 F.3d 52, 115 (2d Cir.1999), but we have also stated that, "as a general rule[,] the Government may not be required to confer immunity for the benefit of the defense." *United States v. Dolah*, 245 F.3d 98, 105 (2d Cir.2001). Zapata failed to produce any evidence that the government engaged in the discriminatory use of immunity or forced Londono to invoke his privilege against self-incrimination, and thus has not established the requisite extraordinary circumstances. *See Diaz*, 176 F.3d at 115 (stating that immunity may be conferred where, *inter alia*, the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment).

## C. *Objections During Defense Counsel's Summation*

■ Zapata's additional claim that it was error for the district court to sustain several objections the government made during defense counsel's summation lacks merit. The district court acted within its discretion by limiting the scope of defense counsel's summation in response to the government's objections. With respect to the government's first objection, defense counsel's statements that two witnesses, in exchange for their testimony, would escape prosecution for making false statements were speculative and predicated on facts not in evidence. *See United States v. Schafrick*, 871 F.2d 300, 305 (2d Cir.1989)

(noting that statement in closing argument regarding facts not in evidence was improper). With respect to the government's second objection, a defendant may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analyses, but defense counsel here did more than that in this case because he argued that the government had failed to undertake to procure such evidence. *See United States v. Saldarriaga*, 204 F.3d 50, 52–53 (2d Cir.2000) (finding no error in jury instruction indicating that the jury must base its decision on the evidence or lack of evidence presented at trial and that the government is not required to use any particular investigative or law enforcement techniques).

## D. *Conscious Avoidance Charge*

■ Finally, we reject Zapata's argument that the district court erred in giving a conscious avoidance charge in its jury instructions. *See United States v. Aina–Marshall*, 336 F.3d 167, 170 (2d Cir.2003) (reviewing jury instructions *de novo* and noting that we reverse only where, "viewing the charge as a whole, there was a prejudicial error"); *United States v. Reyes*, 302 F.3d 48, 55 (2d Cir.2002) (stating that conscious avoidance charge is appropriate where a defendant claims to lack some specific knowledge necessary to conviction but the evidence may be construed as deliberate ignorance). Although Zapata claimed that she did not know that money she took to Florida was for a drug transaction, the government presented evidence at trial that: (1) Zapata had numerous contacts with men who ran a narcotics operation; (2) these men, who had no visible means of support, gave Zapata large amounts of cash to transport to Florida; (3) Zapata took two trips to Florida, one of which lasted less than ten hours, while carrying the large quantities of cash; and

(4) Zapata twice wired money to Florida. The instruction was proper because a rational juror could have concluded beyond a reasonable doubt, from the evidence presented at trial, that Zapata was aware of a high probability of the fact in dispute and consciously avoided confirming that fact. *See Aina–Marshall,* 336 F.3d at 170.

For the foregoing reasons, the judgments of the district court are AFFIRMED.