12-2479-cv
Marshall v. Randall

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: March 8, 2013    Decided: June 12, 2013)

Docket No. 12-2479-cv

------------------------------------------------------x

JOSHUA MARSHALL,

    Plaintiff-Appellee,

-- v. --

P.O. SALIM RANDALL, Shield No. 15331, Individually and in His Official Capacity, P.O. MICHAEL BURBRIDGE, Shield No. 15488, Individually and in His Official Capacity,

    Defendants-Appellants,

THE CITY OF NEW YORK, JOHN DOE, P.O.'s #1-10 Individually and in Their Official Capacities, (the name John Doe being fictitious, as the true names are presently unknown),

    Defendants.

------------------------------------------------------x

B e f o r e :   WALKER, LYNCH, and CARNEY, Circuit Judges.

Defendants-Appellants Salim Randall and Michael Burbridge appeal from the 2012 judgment of liability of the United States District Court for the Eastern District of New York (Weinstein, Judge).  After a jury trial, Defendants-Appellants were found liable for false arrest, malicious prosecution, and violation of Joshua Marshall's right to a fair trial.  They were ordered to pay damages of $95,000 each.  We hold that there was no error in the district court's trial rulings.  AFFIRMED.

JON L. NORINSBERG (Gerald M. Cohen, Joshua P. Fitch, Cohen & Fitch LLP, on the brief), New York, NY, for Plaintiff-Appellee.

AVSHALOM YOTAM (Francis F. Caputo, Karen M. Griffin on the brief), of counsel to Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, for Defendants-Appellants.

JOHN M. WALKER, JR., Circuit Judge:

Defendants-Appellants Salim Randall and Michael Burbridge appeal from the 2012 judgment of liability of the United States District Court for the Eastern District of New York (Weinstein, Judge). After a jury trial, Defendants-Appellants were found liable for false arrest, malicious prosecution, and violation of Joshua Marshall's right to a fair trial. They were ordered to pay damages of $95,000 each. We hold that there was no error in the district court's trial rulings and affirm the judgment.

**BACKGROUND**

We assume the parties' familiarity with the underlying facts and procedural history and recite only those details relevant to this appeal.

On May 15, 2008, Marshall was arrested in Brooklyn by Police Officers Randall, Burbridge, and Kieran Fox (who is not a defendant in this case). Marshall was walking down a sidewalk with another man, Demetrios Meade, when they were approached by the officers. As the officers drew near, one of the men threw away a gun, which

2

landed in the street. The officers arrested Marshall on the charge of possessing a loaded firearm. Their statements to the local district attorney resulted in a criminal complaint against Marshall, and their testimony to a grand jury led to Marshall's indictment. Marshall was released in September 2008 after four months in jail. Approximately eight months after his release from jail, the judge dismissed Marshall's case on speedy trial grounds.

Marshall then sued Randall and Burbridge under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and denial of his constitutional right to a fair trial. The essence of Marshall's claim was that the officers lied when they said they had seen Marshall throw the gun. At trial, Marshall called the two officers as part of his direct case and cross-examined them as hostile witnesses. Marshall's strategy at trial was to attack the officers' credibility based on inconsistencies in their accounts of the events on the night of the arrest.

The initial police complaint and arrest report, filled out by Randall, indicated only that Marshall "was found to be in possession of a loaded firearm." J.A. 85 (Police Compl.). The criminal complaint filed by the Kings County District Attorney's office similarly stated that Randall "observed the defendant in possession of a loaded .38 Caliber Smith and Wesson revolver." Id. at 104 (Crim. Ct. Compl.). Randall testified to the grand jury that Marshall "pulled a firearm out of his waist[band] and tossed

3

it into the street." Id. at 129-30 (Grand Jury Tr.). At his deposition, Randall testified that he saw Marshall in physical possession of the pistol "[w]hen he reached into his pants and pulled out an object and threw it to the ground." Id. at 571 (Dep. Tr.). At trial, however, Randall admitted that he never saw the gun in Marshall's "actual physical possession," id. at 1001 (Trial Tr.), but that he "saw the motion, . . . [and] heard the clink when it hit the ground," id. at 1003 (Trial Tr.).

The evidence against Burbridge was similar. The criminal complaint stated that Burbridge "recovered [the] revolver from the ground where [Burbridge] observed the defendant throw it." Id. at 104 (Crim. Ct. Compl.). Burbridge testified to the grand jury that he "observed Mr. Marshall remove what appeared to be a silver firearm from his waist[band] and throw it under a vehicle." Id. at 123-24 (Grand Jury Tr.). At his pre-trial deposition, Burbridge testified that he could not remember from which part of his waistband Marshall pulled the gun, but at trial he testified that Marshall pulled the gun from the center of his waistband. Burbridge also gave conflicting deposition testimony about whether he saw Marshall make a furtive movement before his decision to approach Marshall and Meade, or whether that decision had been based entirely on his recognition of Marshall from a NYPD database of police and arrest reports.

4

The jury found Randall and Burbridge liable on all three counts and awarded $95,000 in compensatory and punitive damages against each officer.  This appeal followed.

<strong>DISCUSSION</strong>

Randall and Burbridge challenge three elements of the district court's trial rulings: (1) the use of their grand jury testimony as violative of the rule in Rehberg v. Paulk, 132 S. Ct. 1497 (2012); (2) the lack of a jury instruction disclosing that Marshall's criminal case was dismissed on speedy trial grounds; and (3) the exclusion from trial of evidence that Burbridge stopped Marshall in part because he recognized Marshall from a review of NYPD arrest reports.

**1. Use of Grand Jury Testimony**

Citing Rehberg, Randall and Burbridge argue that their grand jury testimony, admitted for impeachment purposes, was improperly used by Marshall as a basis for liability.  Marshall responds that the use of grand jury testimony for impeachment did not violate Rehberg's holding that a grand jury witness has immunity from a malicious prosecution action based on the witness's grand jury testimony.  We hold that the grand jury testimony was properly admitted for impeachment purposes and that the manner in which it was used at trial did not contravene the rule in Rehberg.

We review the district court's evidentiary rulings for abuse of discretion and "will reverse only if an erroneous ruling

5

affected a party's substantial rights." Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 124 (2d Cir. 2005). In general, a party is entitled to a new trial if the district court committed errors that "were a clear abuse of discretion that were clearly prejudicial to the outcome of the trial," where prejudice is measured "by assessing the error in light of the record as a whole." Id. (quotation marks omitted). A district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) (quotation marks omitted).

In Rehberg, the chief investigator for a local district attorney was sued in a § 1983 action following Rehberg's indictment based on the investigator's grand jury testimony. The Supreme Court held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." Rehberg, 132 S. Ct. at 1506. It reasoned that the justifications for absolute immunity for trial witnesses also applied to grand jury witnesses: "In both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence. And in neither context is the deterrent of potential civil liability needed to prevent perjurious testimony." Id. at 1505; see also Briscoe v. LaHue, 460 U.S. 325 (1983) (establishing trial witness immunity). The Court also noted that the "subversion of grand jury secrecy" was an additional supporting factor. Id. at 1509.

6

This case asks us to consider what the Supreme Court meant by "any § 1983 claim based on the witness' testimony." Id. at 1506 (emphasis added). In Rehberg, the plaintiff's assertion of § 1983 malicious prosecution liability was predicated exclusively on the allegations that the investigator lied to the grand jury. In this case, Marshall presented evidence of grand jury testimony, along with (among other things) the police report, the officers' statements to the district attorney as reflected in the criminal complaint, and the inconsistencies in deposition and trial testimony. We must determine whether the use of the officers' grand jury testimony for impeachment purposes and the references to the grand jury testimony during opening and closing statements in this § 1983 action nonetheless caused the action to be "based on" the witness's grand jury testimony.

Turning first to the use of grand jury testimony for impeachment, we agree with the district court that such use does not violate Rehberg. Evidence that is inadmissible as direct proof is frequently permitted for impeachment purposes. See, e.g., United States v. Griffith, 385 F.3d 124, 126-27 (2d Cir. 2004) (noting that there is a "distinction between using evidence to prove substantive guilt and using evidence to impeach" and collecting cases); see also Harris v. New York, 401 U.S. 222, 225-26 (1971) (holding that a statement made by a defendant to police in violation of Miranda is inadmissible as direct evidence but

admissible for impeachment purposes).  And juries are often called upon to distinguish between proper and improper purposes of testimony.

When Marshall questioned the officers as hostile witnesses, their grand jury testimony was admitted only to attack their credibility.  The district court was explicit in its jury instruction that this testimony could not be a basis for liability: "A defendant cannot be held liable for what he said to the grand jury.  He may be held liable for what he said to the prosecutor if his statement was not in preparation for his grand jury testimony." J.A. 1218 (Trial Tr.).  We have no reason to believe the jury did not follow this instruction.  See United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.") (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993)).  Therefore, the use of grand jury testimony to impeach the officers did not violate Rehberg and is not grounds for reversal.[1]

---

[1] We are mindful of the potential for jury confusion in a case such as this, in which the underlying factual subject of the grand jury testimony used to impeach the defendants - which could not be used as a direct basis for suit under Rehberg - is the same as the factual subject that underlies the suit and the previous prosecution.  In this case, that would be whether the police officers actually saw Marshall in possession of a gun.  Plainly, there would be no such potential for confusion had the officers given conflicting statements as to a collateral matter, such as how brightly the street was lit on the night of the arrest.  We believe that the risk of jury confusion was adequately reduced, however, by

Marshall's use of this testimony was not limited to cross-examining the witnesses, however.  In both his opening and summation, Marshall made references to the grand jury testimony that were not self-limiting as purely for impeachment purposes.  These references in the summation included the following:

> Now, if he never saw this object in the physical possession of Mr. Marshall, why did he swear under oath to a grand jury that he did see it?  I mean, those two stories aren't true; either you saw it, or you didn't.
>
> . . .
>
> What he told that grand jury is a lie.
>
> . . .
>
> When [Burbridge] appeared before the grand jury, one story.  When he appeared in the civil lawsuit, another story.
>
> . . .
>
> They duped it and put it over on the grand jury with these false stories.
>
> . . .
>
> You can send a message through your verdict . . . to any other police officer out there that thinks it's okay to get in front of a grand jury and lie.

J.A. 1206, 1207, 1210, 1211 (Trial Tr.).

The defendants argue that these comments demonstrate that plaintiff's § 1983 claim for malicious prosecution was "based on

_____

the district court's instructions and the substantial amount of evidence supporting Marshall's direct case independent of the grand jury testimony.

9

the witness' testimony [before the grand jury]," Rehberg, 132 S. Ct. at 1506. This argument is not without some force. Although we find the question to be close, on balance, we believe that the district court's limiting instructions – to the effect that the jury could not base liability on the grand jury testimony – sufficiently alleviated any prejudice to the point that a new trial is not required.[2]

As we noted earlier, after the closing statements, the district court instructed the jury that a "defendant cannot be held

---

[2] We note that while the jury was deliberating, Marshall's counsel ascribed two purposes for his references in summation to the defendants' grand jury testimony: "to overcome the presumption [of probable cause created by the indictment], one, and two, to address the general issues of credibility." J.A. 1308 (Trial Tr.). In Manganiello v. City of New York, 612 F.3d 149 (2d Cir. 2010), we stated that

> [w]here there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome.

Id. at 162 (quoting Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003)).

The district court suggested that Rehberg might cast doubt on the continued vitality of Manganiello, but noted that defense counsel had not asked for an instruction limiting the grand jury references to credibility during his adversary's summation but that had counsel done so, the district court would have given it, see J.A. 1309 (Trial Tr.). When the court opined that it was now too late for the instruction, see id., defense counsel did not take issue with that view. Marshall and Burbridge recognize this tension in their brief on appeal, but do not advance a completed argument on this basis, so we do not consider how Rehberg affects our holding in Manganiello.

liable for what he said to the grand jury," and that "[t]he opening[s] and closings are not evidence." Id. at 1218, 1217 (Trial Tr.). And, after the jury had begun its deliberations, the district court told the jury:

> In going through the transcript this morning, I noticed that it was suggested that you send a message. I don't want you to send any messages. I just want you to decide the case in accordance with my instructions[.]

Id. at 1312 (Trial Tr.). The jury indicated that it understood the judge's instruction. Had the defendants so requested, the jury instructions could have been crafted more specifically to ensure no violation of Rehberg under any party's interpretation of the case. But no such request was made in time for it to impact the jury's deliberations. We believe the instructions given adequately reflected the holding in Rehberg and mitigated the prejudicial impact of the opening and closing statements to the point that a new trial is not warranted.

**2. Speedy Trial Instruction**

Randall and Burbridge also argue that the jury should have been instructed that Marshall's criminal prosecution did not end in an acquittal. The district court instructed the jury: "There's no dispute that criminal proceedings were commenced and continued and that they ended in plaintiff's favor." J.A. 1218 (Trial Tr.). The parties agree that Marshall's case was dismissed in light of speedy trial concerns, but they disagree about whether the nature of the

11

dismissal should have been conveyed to the jury. We review "a claim of error in the district court's jury instructions *de novo*, and will reverse on this basis only if the [appellants] can show that in viewing the charge given as a whole, they were prejudiced by the error." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994).

The district court's instruction is not a basis for a new trial. The malicious prosecution charge provided, in relevant part, as follows:

> A person is maliciously prosecuted when, first, criminal proceedings are initiated or continued against him by the defendant. Two, the proceedings are terminated in his favor. Three, there was no probable cause for the commencement of the proceeding. And four, the defendant's actions leading to the initiation of proceeding[s] against the plaintiff were motivated by malice of a defendant.
>
> There's no dispute that criminal proceedings were commenced and continued and that they ended in plaintiff's favor.

J.A. 1218 (Trial Tr.). In context, it is evident that the district court's instruction was meant to remove from the jury's consideration the second element of the malicious prosecution claim. Randall and Burbridge do not dispute that Marshall's criminal case was dismissed on speedy trial grounds or that such a dismissal was in Marshall's favor. An underlying acquittal is not a necessary prerequisite for a malicious prosecution charge, and while it is possible that the jury inferred that the case ended in

12

an acquittal, the inference that the case was procedurally terminated was equally possible. All that is necessary is a "favorable termination," which is what occurred here and what the district court instructed. See Rogers v. City of Amsterdam, 303 F.3d 155, 160 (2d Cir. 2002) ("[U]nder New York law, a dismissal pursuant to New York Criminal Procedure Law § 30.30 - New York's speedy trial statute - constitutes a favorable termination [for purposes of a malicious prosecution action]."); see also J.A. 115-16 (Crim. Ct. Order) (dismissing Marshall's case on the basis of the same statute). The instruction's reference to the favorable termination of the prosecution without further elaboration is therefore not a basis for reversal or a new trial.

### 3. Exclusion of Recognition Evidence

Finally, Randall and Burbridge argue that the district court erred in excluding evidence that Burbridge recognized Marshall on the night of the arrest from Burbridge's review of NYPD arrest and complaint reports. Before trial, the district court excluded the recognition evidence on the basis that there was "only one issue" in the case - whether the officers saw Marshall with the gun - and that it did not "want the case expanded" to include the broader issue of whether the initial stop was valid. J.A. 875-76 (Hearing Tr.). The district court's ruling did not inhibit Marshall's counsel from nearly opening the door to the recognition evidence by intimating that the stop was unlawful, however. For instance:

13

```
Q: Now at some point, Officer Burbridge
suggested that you stop Mr. Marshall, true?

[Defendants' Attorney]: Objection.  Objection,
Your Honor.  That question is the subject of
an in limine ruling.

The Court: A what?

[Defendants' Attorney]: An in limine ruling.

The Court: Repeat the question, please.

(Record read back by the reporter.)

The Court: Overruled.
```

Id. at 989 (Trial Tr.).  After several similar questions, during a break without the jury present, defense counsel sought a ruling that Marshall had opened the door to the reasons for the initial stop.  The district court denied the motion, stating that no door had been opened and that Marshall had "been referring . . . to the period from the time the Defendants first observed the Plaintiff until the arrest."  Id. at 1097 (Trial Tr.).

Randall and Burbridge moved unsuccessfully for a mistrial on the basis that Marshall had opened the door but that they had not been allowed to present their recognition testimony.  They then asked the district court to give a curative instruction indicating that the initial stop was not at issue.  The district court gave the curative instruction:

```
The initial stop was lawful.  You can assume
that.  That's not the violation that's claimed
here.  The evidence relating to observation
and acts surrounding the stop may be
considered in deciding credibility.  So you
```

14

> can consider all of the evidence from the time they first observed, according to their evidence, the defendant up to the time when he was placed under arrest.

Id. at 1217 (Trial Tr.).

The district court's exclusion of the recognition evidence proffered by the defendants is not a basis for disturbing the jury's judgment. We review this evidentiary ruling for abuse of discretion and will reverse only if the "erroneous ruling affected a party's substantial rights." Marcic, 397 F.3d at 124. On appeal, Burbridge and Randall argue, as they did at trial, that Marshall opened the door by intimating the stop was improper and that they were unduly prejudiced because they were not allowed to elicit the true basis for the stop – recognition of Marshall from a review of NYPD arrest and complaint reports.

The district court's rulings regarding the recognition evidence were a bit uneven. Although it seemed before trial that all evidence relating to the initial stop would be excluded, the district court allowed some evidence about the stop, but not the recognition evidence sought by the defendants. The district court's curative instruction, however, alleviated any confusion on this score and mitigated any damaging effect of Marshall's questioning about the stop. Nor is there any basis to believe that the jury disregarded the district court's instruction. See Downing, 297 F.3d at 59. In sum, the district court's handling of the recognition evidence issue does not merit a new trial.

15

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.