NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0251n.06

No. 15-5693

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID HOSCHAR; EMILY HOSCHAR, | ) | **FILED** |
| | ) | May 10, 2016 |
| Plaintiffs – Appellants, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| CHRIS LAYNE, individually and as an employee of | ) | ON APPEAL FROM THE |
| the Winchester, Tennessee Police Department; | ) | UNITED STATES DISTRICT |
| DANNY MANTOOTH, individually and as an | ) | COURT FOR THE EASTERN |
| employee of the Winchester, Tennessee Police | ) | DISTRICT OF TENNESSEE |
| Department; KENNETH MARK WILSON, Tennessee | ) | |
| Bureau of Investigation, | ) | |
| | ) | |
| Defendants – Appellees. | ) | |

BEFORE:     ROGERS and WHITE, Circuit Judges; HOOD, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** This § 1983 and state-law malicious prosecution action arose out of the criminal investigation and grand-jury indictment of Plaintiff David Hoschar, a pastor, for possession of child pornography. David and his wife Emily Hoschar allege that Defendants Chris Layne and Kenneth Mark Wilson, the principal investigating officers, gave false or misleading testimony before a grand jury in order to obtain an indictment against Hoschar. The district court granted Layne and Wilson summary judgment on the § 1983 claim on the ground that their grand jury testimony was protected by absolute immunity under *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), and on the state-law claim on the ground that the Hoschars failed to establish that the proceeding was instituted without probable cause. On

---

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

appeal, Plaintiffs challenge only the grant of summary judgment on the federal claim,[1] which we

AFFIRM.

**I.**

The Hoschars lived in South Pittsburg, Tennessee, across the street from the church

where David was the pastor. Because the church did not have an internet connection, the

Hoschars installed a wireless router and internet connection in their home. The Hoschars did not

set a password on the router.

On April 5 and 6, 2010, Layne, a Winchester police detective and Internet Crimes

Against Children (ICAC) task-force officer, discovered that still images containing child

pornography were being downloaded from an IP address in South Pittsburg. Layne obtained the

IP address and subpoenaed records from the internet-service provider, which showed that the IP

address belonged to Emily at the Hoschar home.

Layne spoke with Wilson–an agent of the Tennessee Bureau of Investigation (TBI)–

regarding the information he had obtained and discussed seeking a search warrant. Layne

prepared an affidavit, the district attorney signed off on it, and Layne and Wilson appeared

before a judge and obtained a search warrant. Layne, Wilson, and Sergeant Danny Mantooth[2]

executed the search warrant on April 26, 2010, and seized a desktop computer and a laptop

computer that Layne submitted to the TBI for forensic analysis.

Layne and Wilson questioned the Hoschars and their two adult children, who lived

elsewhere. All the Hoschars denied downloading or being aware of child pornography on either

computer. The Hoschars' son Kirk told Layne and Wilson that he had defragmented one of the

---

[1] Because the Hoschars' appellate brief does not address the state-law claim, that claim is abandoned. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016) ("An appellant abandons issues not raised and argued in his initial brief on appeal."); *see also* Fed. R. App. P. 28(a).

[2] The Hoschars abandoned any claim against Winchester police Sergeant Danny Mantooth by failing to mention Mantooth in their appellate brief. *See Hih*, 812 F.3d at 556; *see also* Fed. R. App. P. 28(a).

computers because it was running slowly, and that he neither found nor deleted any pornographic images or specialized software. Knowing that the child pornography had been downloaded in the late evening and early morning, Layne and Wilson questioned Emily Hoschar on her comings and goings. She told them that she often went to bed before her husband and that she left for work in the early morning.

The TBI determined that neither computer contained child pornography. The forensic report states that LimeWire file-sharing software "appears to have been installed at one time" on the laptop's hard drive, and "[i]t appears that the program was last used on March 15, 2009 and the program is currently uninstalled. No other relevant information was found on this hard drive." The TBI report states that no relevant information was found in its forensic analysis of the desktop computer. After receiving the TBI forensic report, Layne and Wilson discussed the case with the district attorney general, who advised Layne to present the case to a grand jury.

On December 6, 2010, Layne and Wilson testified before a Marion County grand jury, which returned an indictment charging Hoschar with sexual exploitation of a minor under Tenn. Code Ann. § 39-17-1003, for possessing child pornography. Hoschar was arrested on December 14, 2010, and released on bond the same day. At the request of the church elders, Hoschar resigned his pastor position. More than eighteen months later, on May 17, 2012, the state of Tennessee dismissed the case against him without prejudice (nolle prosequi).

## II.

We review the district court's grant of summary judgment de novo, viewing the facts and inferences therefrom in the light most favorable to the Hoschars. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**A.**

The Hoschars' malicious-prosecution claim under 42 U.S.C. § 1983 is premised on a Fourth Amendment violation; thus they must show: 1) a criminal prosecution was initiated against David Hoschar and Layne and Wilson made, influenced, or participated in the decision to prosecute; 2) there was a lack of probable cause for the criminal prosecution; 3) as a consequence of a legal proceeding, David Hoschar suffered a deprivation of liberty; and 4) the criminal proceeding was resolved in Hoschar's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Where a § 1983 malicious-prosecution claim is grounded solely on grand jury testimony, however, it is governed by *Rehberg v. Paulk*, 132 S. Ct. 1497, 1500 (2012), which "announced the bright line rule that a grand jury witness, including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the witness' testimony,' even if that testimony is perjurious." *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (quoting *Rehberg*, 135 S. Ct. at 1506).

**B.**

The facts viewed in a light most favorable to the Hoschars are that Layne and Wilson knew, but did not explain to the grand jury, that someone in the vicinity of the Hoschar home could have downloaded the child pornography because the Hoschars' router was not password protected. Additionally, Layne and Wilson told the grand jury that a second laptop was not found during the search of the Hoschar home without clarifying that the Hoschars' adult daughter, who lived elsewhere, had taken that laptop with her when she married in 2009, and that Emily Hoschar had so informed Wilson when she called him several days after Defendants searched the Hoschar home. Further, Layne knew or should have known that the TBI report ruled out that either computer found at the Hoschar home had been "scrubbed" of child

pornography because the report stated that the only peer-to-peer software found on either computer, Limewire, had been uninstalled in 2009.

It is unfortunate that Layne and Wilson did not provide a more complete and balanced picture to the grand jury. Nonetheless, because the Hoschars' § 1983 claim rests entirely on Layne's and Wilson's grand jury testimony, *Rehberg* controls and we must affirm the district court's grant of summary judgment on the basis of absolute immunity.

The defendant in *Rehberg*, James Paulk, was the chief investigator for a district attorney. Paulk investigated Charles Rehberg for several crimes, testified before a grand jury three times, and obtained indictments against Rehberg each time. 132 S. Ct. at 1500–01. After the indictments were dismissed, Rehberg brought an action alleging that Paulk conspired to present, and did present, false testimony to the grand jury. *Id.* at 1501. Asserting the defense of absolute immunity, Paulk moved to dismiss. 611 F.3d at 828. The district court denied the motion, but the Eleventh Circuit reversed, *id.*, dismissing Rehberg's claim on the basis that Paulk "was absolutely immune from a § 1983 claim based on his grand jury testimony." 132 S. Ct. at 1501. The Supreme Court agreed:

> [A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony . . . . [T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.

*Id.* at 1506. The *Rehberg* Court declined to draw a distinction between a "complaining" grand jury witness and any other grand jury witness, or between law-enforcement witnesses and lay witnesses:

> By testifying before a grand jury, a law enforcement officer does not perform the function of applying for an arrest warrant; nor does such an officer make the critical decision to initiate a prosecution. It is of course true that a detective or case agent who has performed or supervised most of the investigative work in a

> case may serve as an important witness in the grand jury proceeding and may very much want the grand jury to return an indictment. But such a witness, unlike a complaining witness at common law, does not make the decision to press criminal charges.

> Instead, it is almost always a prosecutor who is responsible for the decision to present a case to a grand jury.

*Id.* at 1507–08.

Sixth Circuit authority applying *Rehberg* in the malicious prosecution context is sparse. In *Kavanaugh v. Lexington Fayette Urban Cty. Gov't*, No. 14-6323, 2015 WL 5040219, at *8 (6th Cir. Aug. 26, 2015), this court held that even if the defendant police detective misled or gave false testimony before the grand jury, as the plaintiff asserted, the detective had absolute immunity from any § 1983 claim based on her grand jury testimony under *Rehberg*. *Id.*

In *Vaughan v. City of Shaker Heights*, 514 F. App'x 611 (6th Cir. 2013), the plaintiff's § 1983 malicious-prosecution claim was premised on a defendant police officer's failure to disclose exculpatory evidence in testimony before a grand jury. *Id.* at 613. This court held that the defendant officer's motion to dismiss should have been granted because "*Rehberg* indisputably allows officers the defense of absolute immunity against any § 1983 claim premised upon grand jury testimony." *Id.*

This case is not distinguishable from *Rehberg*, *Kavanaugh*, and *Vaughan*. Like the claims in those cases, the Hoschars' claim derives from Layne's and Wilson's grand jury testimony. The Hoschars challenge, for example, the officers' failure to explain to the grand jury that the router was not password protected, the officers' failure to explain that the Hoschar home was located next to a motel, and the officers' failure to mention that they knew that the Hoschars' daughter had the second laptop computer. Because the Hoschars' claim depends on

the grand jury testimony, Layne and Wilson are protected by absolute immunity even if their testimony was false or misleading.

### C. Authority Cited by the Hoschars

The Hoschars cite several cases in support of their argument that Layne and Wilson are not protected by absolute immunity. None of these cases requires reversal or remand.

The Hoschars cite *Frederick v. New York City*, No. 11 Civ. 469 (JPO), 2012 WL 4947806 (S.D.N.Y. October 11, 2012), in which the plaintiff sought to unseal grand-jury minutes to review the testimony of a lay witness who the plaintiff claimed would prove that the defendant police officer, who *did not* testify before the grand jury, had influenced a photo lineup. *Id.* at *1-2, 4. *Frederick* held that *Rehberg* did not preclude use of the lay witness's grand jury testimony:

> *Rehberg* does not create a categorical bar to the use of grand jury testimony as evidence against defendants in malicious prosecution suits brought pursuant to § 1983. Rather, where *Rehberg* bans 'using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution,' that decision prohibits only the use of a witness's own grand jury testimony against that witness if he or she subsequently becomes a § 1983 defendant.

*Id.* at *4. This case, unlike *Frederick*, involves the use of § 1983 defendants' own grand jury testimony.

Also inapposite is *Sankar v. City of New York*, No. 07 CV 4726 (RJD) (SMG), 2012 WL 2923236 (E.D.N.Y. July 18, 2012), in which one of the defendant police officers, in addition to testifying before a grand jury, signed a sworn criminal complaint against the plaintiff. *Id.* at *2-3. The *Sankar* court rejected the defendants' argument that *Rehberg* clearly counsels against finding that an officer's signing of a sworn criminal complaint alone is sufficient to satisfy the initiation prong of a malicious prosecution claim, observing that *Rehberg* is "inapplicable" because it "did not alter controlling Second Circuit (and New York) law that an officer's filing of

a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim," and that therefore the "[d]efendants' attempt to convert grand jury testimony into an all-purpose shield from malicious prosecution liability is unpersuasive." *Id.* at *3. The court further observed, "[i]f anything, *Rehberg* reinforces the distinction between one who simply testifies at a grand jury and does not make the decision to press criminal charges . . . and one . . . who sets the wheels of government in motion by instigating a legal action." *Id.* (internal alteration, quotations, and citation omitted.) In the instant case, the Hoschars have not shown that Layne and Wilson signed a criminal complaint or initiated the prosecution; the district attorney general made the decision to submit the matter to the grand jury, which returned the indictment.

The Hoschars also cite *Marshall v. Randall*, 719 F.3d 113 (2d Cir. 2013), in which the defendant police officers' statements to the district attorney "resulted in a criminal complaint against [the plaintiff], and their testimony to a grand jury led to [the plaintiff's] indictment." *Id.* at 115. The defendant officers appealed a judgment of liability entered after a jury trial on the plaintiff's § 1983 claims of malicious prosecution, false arrest, and fair-trial violations, challenging under *Rehberg* the use of their grand jury testimony at trial. The Second Circuit concluded that the use of grand jury testimony for impeachment purposes did not contravene the rule in *Rehberg*, approving the district court's limiting instruction that the grand jury testimony was admitted only to attack credibility and that the jury could not base liability on the grand jury testimony. 719 F.3d at 117. Here, the Hoschars seek to use the grand jury testimony as substantive support for their claim, not as impeachment evidence.

The Hoschars also cite *Coggins v. Buonara*, 776 F.3d 108 (2d Cir. 2015), in which a defendant officer gave admittedly false testimony before a grand jury and also was alleged to have "knowingly falsified and omitted material facts from police reports." *Id.* at 109. After the

officer was charged with perjury and pleaded guilty, the plaintiff brought an action alleging that the officer falsified official documents and conspired to create an untrue version of the events. *Id.* at 110–11. The Second Circuit dismissed all claims that were dependent on the officer's grand jury testimony, observing that *Rehberg* extended absolute immunity "to preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony" to the prosecutor. *Id.* at 112 (citation omitted). The Second Circuit allowed the claims unrelated to the officer's grand jury testimony to go forward, which included that the officer and another defendant officer conspired to create an altered version of what had transpired and falsified police reports, and that the officer falsely represented to the district attorney[3] that he had found a weapon and stayed with the weapon until backup arrived. *Id.* at 113 n.7.

*Coggins* does not assist the Hoschars because, unlike in *Coggins*, the Hoschars' claim against Layne and Wilson involves only their grand jury testimony and their preceding discussion with the district attorney general, both of which are clearly protected by absolute immunity under *Rehberg*. *See* 132 S. Ct. at 1506–07.

Finally, the Hoschars cite *Lisker v. City of L.A.*, 780 F.3d 1237 (9th Cir. 2015). In that case, after spending twenty-six years in prison for second-degree murder, the plaintiff was released when a federal court determined that falsified evidence had been presented at trial. *Id.* at 1238. The issue was "whether the doctrine of absolute witness immunity, which shields the detectives from suit for their [grand jury] testimony, also extends to their pre-trial actions." *Id.* at 1239. The court concluded that absolute immunity did not extend to the defendant's notes in a "Murder Book" or to the "allegedly falsified reconstruction of the crime scene." *Id.* at 1242.

---

[3] The *Coggins* court observed that were discovery to show that the officer's statements to the district attorney were "preparatory activity" conducted in advance of his grand jury testimony, the officer would be entitled to absolute immunity for that limited conduct under *Rehberg*. 776 F.3d at 113 n.7.

*Lisker* does not assist the Hoschars because they did not allege or present evidence that Layne or Wilson engaged in such pre-trial conduct.

Because the federal malicious-prosecution claim rests completely on Layne's and Wilson's grand jury testimony, they have absolute immunity under *Rehberg* and we affirm the district court's grant of summary judgment.